IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
HELENA DIVISION

**JERRY HENRY**                                                                               **PLAINTIFF**

v.                                   Case No. 2:13-cv-00044-KGB

**RAY HOBBS, Director,**
**Arkansas Department of Correction,**
**DANNY BURL, DEXTER PAYNE, and**
**JEREMY ANDREWS, Individually and**
**as Agency Representatives**                                                       **DEFENDANTS**

## SUBSTITUTED OPINION AND ORDER[1]

Plaintiff Jerry Henry, a former employee of the Arkansas Department of Correction ("ADC"), brings this action under 42 U.S.C. § 1983 alleging that he was wrongfully terminated on the basis of his race in violation of the Fourteenth Amendment and 42 U.S.C. § 1981. By prior Opinion and Order, the Court granted in part and denied in part defendants' motion to dismiss and dismissed Mr. Henry's official-capacity claims, due process claims, and remaining claims against defendant Ray Hobbs in his individual capacity (Dkt. No. 13). This case then proceeded on Mr. Henry's equal protection and § 1981 claims against defendants Danny Burl, Dexter Payne, and Jeremy Andrews in their individual capacities.

Before the Court is defendants' motion for summary judgment (Dkt. No. 18). Mr. Henry has responded (Dkt. No. 23), and defendants have replied (Dkt. No. 24). For the reasons set forth below, the Court grants defendants' motion for summary judgment.

---

[1] The Court enters this Substituted Opinion and Order solely to replace citations and references to Mr. Henry's first amended complaint, which the Court previously struck from the record (Dkt. Nos. 9, 11), with citations to Mr. Henry's original complaint (Dkt. No. 1).

I.   **Factual Background**

The following facts are taken largely from defendants' statement of undisputed facts, attached exhibits, and record evidence (Dkt. No. 20). Mr. Henry did not file a response admitting or denying specifically the facts in defendants' statement of undisputed facts, but he includes in his memorandum response a "statement of the facts" section with some citations to record evidence (Dkt. No. 23, at 1-3). Mr. Henry has not complied with Local Rule 56.1(b), which requires that the non-moving party opposing summary judgment file "in addition to any response and brief, a *separate*, short and concise statement of the material facts as to which it contends a genuine dispute exists to be tried." Local Rule 56.1(b) (emphasis added). For these reasons, the Court accepts defendants' statement of undisputed facts, where supported by the record or not specifically contested by Mr. Henry, as true to resolve this motion. *See Robinson v. American Red Cross*, 753 F.3d 749, 754-55 (8th Cir. 2014) (considering facts in movant's statement of uncontested facts to be undisputed where non-movant failed to submit responses to movant's statement, through a "separate, short and concise statement of the material facts as to which it contends a genuine dispute exists to be tried," as required by this Court's Local Rule 56.1).

A.   **Mr. Henry's Employment Background**

Until June 2011, Mr. Henry was employed by the ADC as a correctional officer at the ADC's East Arkansas Regional Unit ("EARU"). Mr. Henry held the position of sergeant at the time of his allegedly unlawful termination in June 2011. Mr. Burl has been the warden at the EARU since May 2010. In April, May, and June of 2011, Mr. Payne was the deputy warden at the EARU, and Mr. Andrews was a field major at the EARU. Mr. Henry, Mr. Burl, and Mr. Payne are African American. Mr. Andrews is Caucasian. Mr. Burl terminated Mr. Henry's

employment following an investigation into allegations that Mr. Henry was providing tobacco to an inmate.

### B. Mr. Andrews's Investigation

In March 2011, during an investigation into the introduction of contraband into the EARU through staff, a confidential informant told Mr. Andrews that inmate David Morgan was receiving tobacco from a staff member and selling and distributing tobacco throughout the unit. On March 30, 2011, a search team discovered tobacco and a lighter in the possession of inmate Isaac Evans. Mr. Andrews subsequently interviewed Mr. Evans. Mr. Evans stated that the tobacco belonged to Mr. Morgan and that Mr. Morgan had approached Mr. Evans about moving tobacco throughout the EARU. Mr. Evans also claimed that Mr. Morgan was receiving the tobacco from Mr. Henry; Mr. Henry had passed tobacco to Mr. Evans in the "count room" on March 25, 2011, and other occasions; Mr. Evans witnessed Mr. Morgan give Mr. Henry $500.00 on March 27, 2011; and Mr. Henry was scheduled to bring in another bundle of tobacco on March 30 or 31, 2011 (Dkt. No. 20-1, at 4-5). In addition, Mr. Evans advised that there was more tobacco hidden elsewhere in the barracks, and a second search produced tobacco, money, and a tattoo gun in the specific locations identified by Mr. Evans.

According to the record, Mr. Andrews reviewed camera footage to confirm the allegation that Mr. Morgan and Mr. Henry entered the "count room" on March 25, 2011. The count room is a computer area in which the prison monitors prisoner movement. Mr. Andrews's investigation report states that Mr. Morgan would have been considered out of place, and out of assignment, if found to be in the count room and that Mr. Morgan should not have been called by the staff for anything concerning the count room or its operations. According to Mr. Andrews's

report and deposition testimony, the prison had put out directives not to use Mr. Morgan in the count room area or as a "clerk" (Dkt. No. 20-1, at 3; Dkt. No. 20-3, at 14).

Mr. Andrews and others conducted a search of Mr. Henry when he reported to work on the evening of March 30, 2011. The search did not yield any contraband. Mr. Andrews questioned Mr. Henry, and Mr. Henry denied bringing any type of contraband into the unit for any inmate or receiving any money from any inmate. Mr. Henry did not deny having Mr. Morgan in the count room and stated that he had requested Mr. Morgan's assistance with a shift dismissal form on the computer, although Mr. Henry said he knew that he was not to have Mr. Morgan assisting as a clerk in the count room (Dkt. No. 20-1, at 6).

Mr. Andrews also questioned Mr. Morgan about being in the count room, and Mr. Morgan said he went in the count room twice with Mr. Henry to assist with a form. According to Mr. Andrews's report, he purposely did not question Mr. Morgan about the contraband in order to determine if Mr. Morgan would later speak to another individual regarding the shakedown or his involvement in the contraband.

On April 1, 2011, Mr. Andrews submitted to Mr. Burl his report and a request for an Internal Affairs investigation. Mr. Andrews listed in his report several questions raised by his investigation that he felt corroborated Mr. Evans's statements implicating Mr. Henry and Mr. Morgan (Dkt. No. 20-1, at 7). Mr. Andrews specifically requested that Mr. Evans be given a computerized voice stress analysis ("CVSA") test and that, if necessary, all parties be tested to determine if any disciplinary action should be administered (Dkt. No. 20-1, at 8). Mr. Burl subsequently forwarded that request to the ADC Internal Affairs (Dkt. No. 20-1, at 9).

### C. Internal Affairs Investigation And Voice Stress Test

ADC Internal Affairs assigned the matter to an investigator, Margaret Rogers, who interviewed Mr. Evans on April 29, 2011, and Mr. Morgan and Mr. Henry on May 2, 2011. Another individual, Ruth Clark, conducted CVSA tests in connection with those interviews. During the CVSA tests, Mr. Evans responded "yes" when asked if Mr. Morgan told him that Mr. Henry was bringing the tobacco into the unit and if Mr. Evans saw Mr. Morgan give the $500.00 to Mr. Henry. No deception was indicated for either answer. Mr. Morgan denied that Mr. Henry ever brought him any type of tobacco product or that he had given Mr. Henry money to pay for tobacco; deception was indicated for both responses. Mr. Henry denied bringing in any type of tobacco product to Mr. Morgan or accepting money from Mr. Morgan; deception was indicated for both responses (Dkt. 20-1, at 13-15).

### D. Mr. Henry's Termination

Mr. Burl terminated Mr. Henry on June 30, 2011. In his termination memorandum to Mr. Henry, Mr. Burl recites that ADC Internal Affairs found that Mr. Henry had been deceptive in his CVSA test and that Mr. Henry admitted that he had called Mr. Morgan into the count room and asked him to help work on the computer. Mr. Burl terminated Mr. Henry for committing three offenses prohibited by the ADC Employee Conduct standards:

> AD 10-19. Sec. 17(a) Failure to perform or carry out work related instructions, when such instructions are reasonable and within the employee's ability to perform and would not pose a safety or welfare hazard to the employee.
>
> 17(b) Deliberate refusal to carry out reasonable work requests and or instructions will be construed as insubordination.
>
> 18(b) Falsification of written/verbal/statements/information.

(Dkt. No. 20-1, at 2, 16-17). According to excerpts of the ADC Employee Conduct Standards submitted in the record by Mr. Henry, all three of these are terminable offenses (Dkt. No. 23-6, at 9).

Mr. Henry appealed his termination to the Arkansas State Employee Grievance Appeal Panel. The panel held a hearing and upheld the decision to terminate Mr. Henry, finding that the ADC followed its procedures and that Mr. Henry's conduct was terminable under the employee conduct standards as to section 18(b) where deception was indicated on the CVSA test. The panel did not find that Mr. Henry violated standards 17(a) or (b), but the panel stated that a violation of 18(b) on its own is a terminable offense (Dkt. No. 20-1, at 18-19).

   **E. Comparators**

In his complaint, Mr. Henry alleges that he was treated differently on the basis of his race and claims that, between 2010 and 2012, other Caucasian employees have received lesser discipline or no discipline for failing voice stress analysis tests and for falsifying documents (Dkt. No. 1, ¶ 31).

According to defendants and the declaration of Raja Rogers, the Human Resource Coordinator at the EARU, no Caucasian employee of the EARU took or failed a CVSA test during 2010, 2011, or 2012 (Dkt. No. 20, ¶¶ 1-2). The Court considers these facts undisputed. It is also undisputed that, in March 2014, after Mr. Henry's termination, Mr. Burl terminated a Caucasian employee whom Mr. Burl determined had violated the ADC rule prohibiting falsification of verbal statements. That employee was asked to answer questions during a CVSA test in an investigation into an inmate's allegation that the employee had assisted with the distribution of contraband at the EARU, and his answers were reported as deceptive (Dkt. No. 20, ¶¶ 3-4).

The only specific comparator identified in Mr. Henry's summary judgment papers is Lt. Tyner, a Caucasian employee. Mr. Henry claims that, after his termination, several boxes of contraband cigarettes were found on the bus that was assigned to Lt. Tyner but that Lt. Tyner was not required to submit to a voice stress analysis test or terminated. Mr. Burl testified that the bus was a regional maintenance bus and that all three of his employees working regional maintenance—Lt. Tyner and two African American employees—were under investigation. Mr. Burl said that the investigation did not reveal the source of the contraband and that none of these three employees were terminated. It is not clear from the record exactly when Lt. Tyner's investigation occurred except that Mr. Burl stated in his deposition that this occurred after 2011 (Dkt. No. 23-9, at 4). Mr. Burl could not recall whether any of these three employees were required to submit to a CVSA test (Dkt. No. 23-9). In his deposition, Mr. Henry testified that he briefly spoke with Lt. Tyner in September 2014 but said he did not know whether Lt. Tyner ever took a voice stress analysis test in regard to contraband found in Lt. Tyner's work area (Dkt. No. 20-5, at 38-39).

## II.     Summary Judgment Standard

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law." *Hollway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989). However, parties opposing a summary judgment motion may not

rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### III. Discussion

Mr. Henry alleges an equal protection claim and alleges that he was treated differently on the basis of his race. *See Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1014 (8th Cir. 2013) (determining that the Equal Protection Clause "requires that the government treat such similarly situated persons alike.") (internal quotation marks omitted). Mr. Henry also alleges a related claim of discrimination under 42 U.S.C. §1981, which provides that all persons within the jurisdiction of the United States shall have "the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). The Court considers Mr. Henry's equal protection claim and § 1981 claim together, as both are brought under § 1983 and are subject to the same discrimination analysis as Title VII disparate-treatment claims. *Briggs v. Anderson*, 796 F.2d 1009, 1021 (8th Cir. 1986).

Absent direct evidence of discrimination, courts apply the *McDonnell Douglas* burden-shifting analysis to claims of employment discrimination under the Equal Protection Clause. *Hager*, 735 F.3d at 1014; *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Direct evidence is evidence "showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate

criterion actually motivated" the adverse employment action. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1044 (8th Cir. 2011) (quoting *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004)). The Court sees no direct evidence of discrimination on the record before it. Further, Mr. Henry identifies no direct evidence of unlawful discrimination and instead argues his case under *McDonnell Douglas*. For these reasons, the Court will proceed with a *McDonnell Douglas* analysis.

Under *McDonnell Douglas*, the plaintiff bears the burden of establishing a *prima facie* case of discrimination. *McGinnis v. Union Pac. R.R.*, 496 F.3d 868, 873 (8th Cir. 2007). The establishment of a *prima facie* case creates a presumption of unlawful discrimination, which in turn requires a defendant to come forward with evidence of a legitimate, nondiscriminatory reason for the defendant's actions. *Id.* If the defendant articulates such a reason, the burden returns to the plaintiff to show the defendant's proffered reason is a pretext for discrimination. *Id.* Mr. Henry, as the plaintiff, has the burden of persuasion at all times. *Bone*, 686 F.3d at 955. Mr. Henry's burden to show a genuine issue of material fact regarding pretext "merges with the ultimate burden of persuading the court that [he was] the victim of intentional discrimination." *Id.* (quoting *Torgerson*, 643 F.3d at 1046). "Proof of pretext, coupled with a strong prima facie case, may suffice to create a triable question of fact." *Torgerson*, 643 F.3d at 1046.

          **A.**    *Prima Facie* **Case And Legitimate, Nondiscriminatory Reason**

To establish a *prima facie* case, Mr. Henry must show that: (1) he was a member of the protected group; (2) he was qualified to perform the job; (3) he suffered an adverse employment action; and (4) circumstances permit an inference of discrimination. *Lewis v. Heartland Inns of Am., L.L.C.*, 591 F.3d 1033, 1038 (8th Cir. 2010). "The required prima facie showing is a 'flexible evidentiary standard,'" and Mr. Henry can satisfy the fourth part of the *prima facie* case

9

in a variety of ways, such as by showing more favorable treatment of similarly situated employees who are not in the protected class, or biased comments by a decisionmaker. *Id.* at 1039-40 (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)); *see Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1019 (8th Cir. 2011).

Defendants do not dispute the first three elements of Mr. Henry's *prima facie* case but, without addressing any particular stage of the *McDonnell Douglas* framework, contend that Mr. Henry cannot show more favorable treatment of similarly situated employees. To establish his *prima facie* case, Mr. Henry argues more favorable treatment of similarly situated employees and raises various other arguments that this Court will address at the pretext stage. Assuming without deciding that Mr. Henry has established a *prima facie* case, the Court finds that defendants have articulated a legitimate, nondiscriminatory reason for terminating Mr. Henry's employment. Defendants' burden to show a legitimate, nondiscriminatory reason for the challenged action "is not onerous." *Bone*, 686 F.3d at 954. Defendants' stated reasons for terminating Mr. Henry—the determination that Mr. Henry violated certain standards of employee conduct by falsifying verbal statements during the CVSA test and allowing Mr. Morgan into the count room—satisfy this standard. Accordingly, the burden shifts to Mr. Henry to show pretext.

    **B.**   **Pretext**

To demonstrate pretext, Mr. Henry must both discredit the employer's asserted reason and show that the circumstances permit drawing the reasonable inference that the real reason was race. *Johnson v. AT & T Corp.*, 422 F.3d 756, 763 (8th Cir. 2005). "There are at least two ways a plaintiff may demonstrate a material question of fact regarding pretext." *Torgerson*, 643 F.3d at 1047. First, "[a] plaintiff may show that the employer's explanation is unworthy of credence .

. . because it has no basis in fact. Alternatively, a plaintiff may show pretext by persuading the court that a [prohibited] reason more likely motivated the employer." *Id.* (alterations in original) (citations omitted) (quoting *Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1120 (8th Cir. 2006)) (internal quotation marks omitted). "A plaintiff may show pretext, among other ways, by showing that an employer (1) failed to follow its own policies, (2) treated similarly-situated employees in a disparate manner, or (3) shifted its explanation of the employment decision." *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010). In addressing Mr. Henry's arguments, the Court notes that the Eighth Circuit has stressed that "the employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995).

   1. **Comparators**

Mr. Henry attempts to show pretext through comparator evidence. "At the pretext stage, 'the test for determining whether employees are similarly situated to a plaintiff is a rigorous one.'" *Bone*, 686 F.3d at 956 (quoting *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 853 (8th Cir. 2005), *abrogated on other grounds by Torgerson*, 643 F.3d 1031); *see Johnson v. Securitas Sec. Servs. USA, Inc.*, 769 F.3d 605, 613 (8th Cir. 2014) (en banc) (citing same). To succeed at the pretext stage, Mr. Henry must show that he and the potential comparators he identifies were "similarly situated in all relevant respects." *Id.* (quoting *Rodgers*, 417 F.3d at 853). The employees "used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing

circumstances." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 994 (8th Cir. 2011) (quoting *Cherry v. Ritenour Sch. Dist.*, 361 F.3d 474, 479 (8th Cir. 2004)).

The only comparator Mr. Henry identifies is Lt. Tyner. Lt. Tyner is not similarly situated to Mr. Henry. As an initial matter, Mr. Henry's allegations regarding Lt. Tyner are somewhat different than his allegation that Caucasian employees received lesser discipline or no discipline for failing voice stress analysis tests and for falsifying information (Dkt. No. 1, ¶ 31). Here, there is no record evidence that Lt. Tyner failed a voice stress analysis test or was found to have falsified documents, and Mr. Henry does not argue otherwise. Accordingly, Lt. Tyner cannot be said to have received more favorable treatment as an employee who failed a voice stress test and was found to falsify information. Moreover, even assuming *arguendo* that Lt. Tyner took and failed a CVSA test, he and Mr. Henry are not similarly situated insofar as Mr. Burl determined that Mr. Henry also violated certain rules by having Mr. Morgan in the count room with access to a computer.

Mr. Henry attempts to argue a different theory of disparate treatment in his summary judgment papers. He argues that Ms. Rogers's declaration establishes that Lt. Tyner was not required to submit to a stress test and that he therefore received more favorable treatment. Defendants contend that this constitutes an impermissible attempt to amend Mr. Henry's complaint in response to defendants' motion for summary judgment, citing *Morgan Distribution v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989). The Court disagrees. Mr. Henry's complaint alleges a claim of disparate treatment. That his specific allegations regarding the more preferential treatment afforded Lt. Tyner may have evolved from his original allegations of disparate treatment does not make this a wholly new claim for relief.

Defendants also dispute whether Ms. Rogers's declaration establishes that Lt. Tyner was not required to submit to a CVSA test, stating that her declaration does not cover 2013. The Court does not see anything in the record establishing the exact year the investigation of Lt. Tyner occurred, except that Mr. Burl stated in his deposition that this occurred after 2011 (Dkt. No. 23-9, at 4). Regardless, even if Lt. Tyner was not required to submit to a stress test, the Court still finds that Lt. Tyner is not similarly situated to Mr. Henry and rejects Mr. Henry's attempt to use a disparate treatment theory to make him so. Here, Mr. Henry was investigated and subjected to a CVSA test after Mr. Evans made specific allegations that Mr. Henry was passing contraband to Mr. Morgan in return for money and after a search confirmed Mr. Evans's other allegations as to where contraband was hidden. In contrast, Mr. Burl testified that Lt. Tyner and others were investigated because they worked in regional maintenance and contraband was found on the regional maintenance bus, its origin unknown. There is no evidence, and Mr. Henry does not argue, that any inmate or other individual made any allegations specifically implicating Lt. Tyner.

In his summary judgment papers, Mr. Henry also appears to suggest that Mr. Evans, the inmate in whose possession the contraband was discovered in 2011 and who implicated Mr. Henry and Mr. Morgan, is a comparator, asserting that neither Mr. Andrews nor Mr. Burl recommended that Mr. Evans be disciplined. Mr. Evans, an inmate, is not a similarly situated employee. Lastly, although Mr. Henry does not specifically argue dissimilar treatment on this basis, the Court notes that Mr. Henry testified in his deposition that he could not think of any Caucasian employees who were reported to defendants for allowing Mr. Morgan to assist with the computer and whom defendants did not investigate or discipline (Dkt. No. 20-5, at 31-32).

### 2. Shifting Explanations

Mr. Henry also attempts to show pretext based on shifting explanations. This argument is not well developed in Mr. Henry's summary judgment papers, but he alleges in his complaint that Mr. Burl changed the reason for terminating Mr. Henry "from smuggling contraband to violating ADC policy by allowing an inmate to utilize a computer and to have falsified company documents by failing the voice stress analysis test" (Dkt. No. 1, ¶ 23). Mr. Henry has not presented any record evidence that Mr. Burl changed his reason for Mr. Henry's termination. Mr. Burl listed as the reason for Mr. Henry's termination his determination that Mr. Henry falsified statements by failing the CVSA test and for admitting that he called Mr. Morgan into the count room to use the computer with the knowledge that Mr. Morgan was not allowed to be on the computer, which Mr. Burl determined to be violations of three ADC employee conduct standards. Defendants have submitted Mr. Burl's declaration and deposition testimony in support of their argument that his reason for terminating Mr. Henry's employment never changed. Mr. Henry offers no argument or record evidence that Mr. Burl changed his reason for terminating Mr. Henry's employment.

Although Mr. Henry does not make this argument explicitly, he suggests that the reason for his termination shifted in that the Arkansas State Employee Grievance Appeal Panel did not find that Mr. Henry violated employee conduct standards 17(a) and (b) but upheld his termination based only on section 18(b) for the failed CVSA test. That the panel apparently did not agree with Mr. Burl's determination as to standards 17(a) and (b) does not show that Mr. Burl changed his reasons for terminating Mr. Henry. Mr. Henry has not demonstrated a shifting explanation for his termination so as to establish or raise a genuine issue of material fact regarding pretext.

### 3. Other Arguments

Mr. Henry raises various other arguments to discredit the decision to terminate his employment. First, he contends that a failed stress test is not sufficient grounds for terminating an employee. In support, he cites Mr. Payne's testimony that he understood that failing a CVSA test was sufficient grounds for termination as long "[a]s there is another piece of evidence to go along with it. One piece of corroborating evidence." (Dkt. No. 23-7, at 3). Mr. Burl likewise testified that it was his understanding that a failed CVSA test was not grounds for termination in and of itself; Mr. Burl said that "any corroborating evidence" is needed (Dkt. No. 24-1, at 3). Even if the standard for termination requires corroborating evidence, defendants maintain it was met in that there was ample corroborating evidence to support Mr. Henry's termination. Defendants cite as corroborating evidence that Mr. Evans passed his CVSA test and that the information he provided to Mr. Andrews proved to be accurate when the second search discovered contraband in the locations described by Mr. Evans. In his deposition, Mr. Burl specifically cited the CVSA tests of Mr. Evans, Mr. Morgan, and Mr. Henry as evidence connecting Mr. Henry to the money Mr. Morgan allegedly passed to Mr. Henry (Dkt. No. 23-9, at 3).

Mr. Henry also argues that defendants relied upon a CVSA test that they knew to be inaccurate. Specifically, Mr. Henry claims that defendants were aware that Mr. Evans did not witness the alleged exchange of money yet the CVSA test did not indicate deception when Mr. Evans responded that he did witness the exchange of money. Mr. Henry cites in support Mr. Andrews's deposition testimony, but that testimony appears to refer to the exchange of tobacco, not the exchange of money (Dkt. No. 23-3, at 10). Further, according to the ADC Internal Affairs Final Report, Mr. Evans clarified during his interview that he never actually saw Mr.

Henry bring a package into the barracks for Mr. Morgan but instead said that Mr. Morgan confided in Mr. Evans that he received tobacco from Mr. Henry in the count room (Dkt. No. 20-1, at 12, 14). Mr. Evans did state, however, that he saw Mr. Morgan give Mr. Henry $500.00. This is consistent with Mr. Evans's CVSA test results.

The Court makes several other observations. In his deposition, Mr. Henry testified that the reason for his belief that Mr. Andrews discriminated against him on the basis of his race is that Mr. Andrews's "key witness," Mr. Evans, is Caucasian (Dkt. No. 20-5, at 8-9). Defendants argue that this alone is not indicative of discrimination, and Mr. Henry makes no attempt to respond to this argument or address this testimony. The Court agrees that, standing alone, Mr. Evans's race is not indicative of pretext or discrimination. The Court also notes that Mr. Henry alleges in his complaint, and previously argued in his response to defendants' motion to dismiss, that defendants deviated from normal practice by having Major Kelley write Mr. Henry's disciplinary letter rather than the initial investigator, Mr. Andrews (Dkt. No. 1, ¶ 24; Dkt. No. 7, at 2). Pursuant to Local Rule 56.1, the Court accepts as undisputed that Mr. Burl forwarded the ADC Internal Affairs Final Report to Major Kelley to take corrective action because Mr. Henry reported to Major Kelley (Dkt. No. 20, ¶¶ 20-22). Mr. Henry makes no attempt to support his allegation that this was a deviation from normal procedure. Lastly, the Court notes that Mr. Henry testified that he does not believe that either Mr. Burl or Mr. Payne discriminated against him because he is African American (Dkt. No. 20-5, at 12).

Based on the record before the Court, viewing the facts in the light most favorable to Mr. Henry, the Court finds that Mr. Henry has not raised a disputed issue of material fact to demonstrate that defendants' legitimate, nondiscriminatory reason for Mr. Henry's termination was a pretext for discrimination. Accordingly, the Court determines that there is no genuine

issue of material fact in dispute and that defendants are entitled to summary judgment on Mr. Henry's discrimination claim.

### C. Conspiracy Claim

Mr. Henry's allegations against Mr. Burl and Mr. Payne largely rest on a conspiracy claim that Mr. Burl, Mr. Payne, and Mr. Andrews participated in a scheme to terminate Mr. Henry. A constitutional conspiracy requires a showing that two or more persons conspired to deprive another of a constitutional right and that an act was done in furtherance of the conspiracy which caused an injury or deprivation. *Mueller v. Tinkham*, 162 F.3d 999, 1004 (8th Cir. 1998); *Marti v. City of Maplewood, Mo.*, 57 F.3d 680, 685 (8th Cir. 1995).

Defendants have moved for summary judgment on Mr. Henry's conspiracy claim. Mr. Henry does not specifically address his conspiracy claim in his response to defendants' motion for summary judgment, and defendants argue that Mr. Henry has abandoned that claim. Even if Mr. Henry has not abandoned this claim, the Court finds that summary judgment in favor of defendants is appropriate, as the Court has determined that there is no genuine issue of material fact in dispute on Mr. Henry's underlying discrimination claim.

### D. Qualified Immunity

Defendants also move for summary judgment on the issue of qualified immunity. A government official sued in his individual capacity may raise the defense of qualified immunity to § 1983 claims filed. The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Stepnes v. Ritschel*, 663 F.3d 952, 960 (8th Cir. 2011) (citation omitted) (internal quotation marks omitted). To determine if a qualified immunity defense applies, the Court must conduct a two-prong inquiry

by examining: "(1) whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right and (2) whether the constitutional right violated was clearly established at the time of defendant's alleged misconduct." *Id.* (alteration in original) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)) (internal quotation marks omitted). "Unless the answer to both of these questions is yes, the defendants are entitled to qualified immunity." *Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009).

Because the Court finds that Mr. Henry has not established a genuine issue of material fact on his underlying discrimination claims, the Court finds that defendants are entitled to qualified immunity.

***

For the reasons stated above, the Court grants defendants' motion for summary judgment in its entirety (Dkt. No. 18) and dismisses with prejudice Mr. Henry's equal protection and 42 U.S.C. § 1981 claims against Mr. Burl, Mr. Payne, and Mr. Andrews in their individual capacities. Judgment will be entered accordingly.

SO ORDERED this 30th day of January, 2015.

_____
Kristine G. Baker
United States District Judge